Janice G. RICHMAN, Plaintiff,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., a corporation, and Goodbody & Co., a partnership, Defendants.

No. 76 Civ. 3301 (CHT).

United States District Court, S. D. New York.

Oct. 20, 1977.

Wells, Brown, Mason, Burns & Hall, New York City, Thomas M. Kerr, Kaufman & Harris, Pittsburgh, Pa., Howard Moore, Jr., Moore & Bell, Oakland, Cal., John de J. Pemberton, Jr., San Francisco, Cal., for plaintiff; Charles E. Williams, III, New York City, of counsel.

Brian F. Amery, Thomas W. Smith, Merrill Lynch, Pierce, Fenner & Smith, Inc., New York City, for defendant Merrill Lynch, Pierce, Fenner & Smith, Inc.

## MEMORANDUM

TENNEY, District Judge.

Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") has moved for various forms of pretrial relief in this action alleging sex discrimination in employment under 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). The Court is asked to dismiss plaintiff's claims in whole or in part or, failing that, to order a venue change. Because the Court has determined that venue properly lies in the United States District Court for the District of Nevada,[1] it will leave to the transferee court the matters of dismissal or striking of claims pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure.

In April 1969, plaintiff Janice G. Richman was employed as a securities account executive by a then-member-firm of the New York Stock Exchange, Goodbody & Compa-

1. Defendant asked for transfer either to the District of Nevada, as the Court has ordered, or to the Western District of Pennsylvania. *See* note 4 *infra.*

ny ("Goodbody")[2] in their Houston office. Plaintiff alleges that a combination of pervasive sex discrimination in the executive ranks of the securities industry and focal discrimination by her Houston superior forced her to terminate that employment in 1970. She left Texas and moved to Nevada, where she sought reemployment with Goodbody in their Las Vegas office. When this was refused, plaintiff immediately filed discrimination charges against Goodbody with the federal Equal Employment Opportunity Commission ("EEOC"), which deferred the charge to the State of Nevada Labor Commission for investigation. In September 1970, the state agency dismissed plaintiff's charge as unsubstantiated.

In the interim, Goodbody had suffered severe financial reversals, and defendant Merrill Lynch was recruited by the other members of the New York Stock Exchange to refinance and assume the operations of the foundering Goodbody organization. In 1972, the EEOC attempted on plaintiff's behalf to reassert the original discrimination claim against Merrill Lynch in its role as Goodbody's successor. Merrill Lynch disclaimed all liability for Goodbody's conduct. Shortly thereafter, the plaintiff attempted to secure employment at the Merrill Lynch (formerly Goodbody) Las Vegas office and was rebuffed.[3] Plaintiff again filed a charge of sex discrimination with the EEOC, this time against Merrill Lynch directly. This charge was likewise taken up with the Nevada Labor Commission and likewise dismissed. Plaintiff then renewed the Merrill Lynch claim with the EEOC, and her charges were joined with those of seventeen others in a consolidated action brought by the EEOC alleging a pattern and practice of employment discrimination by Merrill Lynch. This action and a related class action against the same defendant were heard in the United States District Court for the Western District of Pennsylvania. In 1976 both actions were concluded by the entry of consent decrees directing, inter alia, extensive affirmative activity by Merrill Lynch to increase the number of women on the executive level. *EEOC v. Merrill Lynch*, Civ. No. 76–754 (W.D.Pa. June 4, 1976); *O'Bannon v. Merrill Lynch*, Civ. No. 73–905 (W.D.Pa. June 4, 1976). However, both decrees specifically reserved to any plaintiffs represented in the actions the right to disassociate themselves from the relief afforded and to pursue their claims against Merrill Lynch individually.[4]

---

**2.** Defendant Merrill Lynch asserts that the Goodbody partnership is still extant. Def. Mem. at 12. Plaintiff has attempted to serve the partnership and several individual Goodbody partners, and "believes that she has successfully served one." Pl. Mem. at 26. However, nothing has been submitted to this Court to support jurisdiction over defendant Goodbody.

**3.** This was apparently not plaintiff's first unhappy encounter with Merrill Lynch. She asserts that she was wrongfully refused employment by them in 1968, Complaint ¶ 6, and in 1971. *Id.* ¶ 7. Both applications were made to the New York office. However, neither rejection, no matter how wrongful, can be the basis of a current claim because plaintiff failed to perfect her rights by filing a timely charge of discrimination under 42 U.S.C. § 2000e–5(e).

"A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before [Title VII] was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but, separately considered, it

is merely an unfortunate event in history which has no present legal consequences." *United Airlines v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). A fortiori, plaintiff's experience with Merrill Lynch in New York cannot be the predicate for a venue choice in the current action.

**4.** Defendant initially contended that the Pennsylvania court retained jurisdiction over this matter by the terms of its decree in the *O'Bannon* action, and submitted that District Judge Barron P. McCune had indicated in a status conference held on the *O'Bannon* litigation that he would accept the instant action should it be transferred to his court. A review of the operative language in the *O'Bannon* decree, however, does not support the idea that jurisdiction was retained:

"Those persons who have filed charges with the EEOC prior to December 31, 1975, and who are also members of the classes as defined herein, may elect to participate in the relief provided by this Decree or to pursue their claims individually. This Decree shall not operate as a bar to the individual claim of any such person who elects not to participate in the relief provided by this Decree."

Ms. Richman opted to do so, and commenced the action in this district.

### Venue

The choice of forum in a Title VII action is strictly governed by the venue provisions in 42 U.S.C. § 2000e–5(f)(3). *Stebbins v. State Farm Mutual Auto Ins. Co.*, 134 U.S. App.D.C. 193, 413 F.2d 1100, *cert. denied*, 396 U.S. 895, 90 S.Ct. 194, 24 L.Ed.2d 173 (1969); *Dubnick v. Firestone Tire & Rubber Co.*, 355 F.Supp. 138 (E.D.N.Y.1973). The statute specifies four categories of judicial districts where a Title VII action may be brought. The plaintiff can choose among the first three: (1) where "the unlawful employment practice is alleged to have been committed"; (2) where "the employment records relevant to such practice are maintained and administered"; and (3) where "the plaintiff would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e–5(f)(3). The fourth choice of venue is conditioned on the first three being unavailable: "[B]ut if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office." *Id.*

■ The facts clearly demonstrate that the District of Nevada is both where the plaintiff would have worked but for the alleged discrimination and the place where the discriminatory acts allegedly occurred. Obviously, then, plaintiff can assert venue in the Southern District of New York only on the basis of employment records allegedly maintained and administered here, although defendant states that these materials are in Las Vegas. Defendant's Memorandum at 19. Two separate tacks are taken by plaintiff in defense of her choice: first, she offers copies of correspondence between the EEOC and the Merrill Lynch Law Department, which is located in New York, and extrapolates from the fact that

Merrill Lynch responded from New York to an EEOC investigation of its hiring practices that employment records pertinent to her individual complaint are located in New York. However, most of the information supplied by Merrill Lynch concerns its hiring practices in general, and in its answers to interrogatories propounded by the EEOC, Exhibit to Plaintiff's Memorandum of Law, Merrill Lynch states that final hiring decisions are made by branch managers. Answer 12, Interrogatories by EEOC to Merrill Lynch. *Id.* Furthermore, one of the few particularized references to plaintiff's individual claim occurs in defendant's Answer 10 to EEOC interrogatories, which is submitted by *plaintiff* in support of her choice of venue: "The full facts surrounding the determination not to hire Mrs. Richman were litigated and are fully reported in the State of Nevada proceeding brought as a result of Mrs. Richman's charge against Merrill Lynch." *Id.* It appears to this Court that even the material which plaintiff submits argues for the proposition that all documentary material relevant to her claim against Merrill Lynch is to be found in Nevada.

■ Plaintiff's other argument for New York venue is more properly a matter of substantive law. She claims that Merrill Lynch is liable to her for Goodbody's discriminatory acts on the theory of "successor corporation liability," *see EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086 (6th Cir. 1974), and that in order to prove this she must have access to records which detail the agreement by which Merrill Lynch succeeded to Goodbody. These records may indeed be valuable to support this claim, and plaintiff's New York counsel may want to engage in discovery here, but these are not the "employment records" the location of which forms a basis for venue in a Title VII action. And while Merrill Lynch apparently has custody of whatever Goodbody personnel records remain extant,

*O'Bannon* at 14–15. Furthermore, by stating that he "did not object" to accepting transfer of the instant case, Transcript of Proceedings, Status Conference, *O'Bannon*, Civ. No. 73–905 (W.D.Pa. Sept. 3, 1976) p. 2, lines 19–20 (Def. Exh.), Judge McCune in no way reenforced the retention theory. Although it is understanda-

ble that defendant might want to try this matter in a district in which it has already litigated similar matters at great length, the Western District of Pennsylvania was not a proper venue choice measured by the criteria in Title VII. *See* 42 U.S.C. § 2000e–5(f)(3).

Letter from Thomas W. Smith, Law Department, Merrill Lynch to Charlene Suneson, Investigator, EEOC Los Angeles District Office, dated July 12, 1972, Exhibit to Plaintiff's Memorandum of Law, it is not clear from the material submitted to the Court that those records are physically within this district. Letter from Smith to Suneson dated February 27, 1973. *Id.* Furthermore, the State of Nevada, having once investigated plaintiff's Goodbody claim through its Labor Commission, may have access to whatever relevant material remains concerning plaintiff's employment at Goodbody.

Finally, even were this Court to conclude that venue was properly laid in the Southern District of New York on the basis of some pertinent records located here, transfer in the interests of justice and for the convenience of all the parties is not foreclosed by 42 U.S.C. § 2000e–5(f)(3). The final sentence in that subsection directs that "[f]or purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought." This language has led at least one other court to conclude that Congress did not intend "to place the venue provisions of Title VII outside the purview of the transfer clauses of 28 U.S.C. §§ 1404 and 1406." *EEOC v. Parish Water Work's Co., Inc.*, 415 F.Supp. 124 (E.D.La.1976). 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." There is no question that this action might have been brought in Nevada; indeed, that is the most logical place for it to be tried. After weighing the criteria to be applied in determining whether transfer is appropriate, *see McCrystal v. Barnwell County, South Carolina*, 422 F.Supp. 219 (S.D.N.Y. 1976), this Court finds that the balance tips decidedly toward Nevada. It is the residence of the plaintiff, the situs of the acts complained of and the place where plaintiff would have worked; defendant's personnel records for that office are located there;

the investigative reports and research data of the Nevada State Labor Commission regarding both the Goodbody and Merrill Lynch claims are most easily obtained in Nevada; the sheer expense and inconvenience of trying in this district an action with such a tenuous connection here and such a strong nexus to a distant forum dictates on practical grounds alone that transfer be granted.

For all of the reasons discussed above, the motion to transfer venue to the United States District Court for the District of Nevada is granted. No action is taken on defendant's motions to dismiss or to strike certain of plaintiff's claims.

So ordered.