**Judy Tobin LAZARUS et al.**

v.

**STATE OF MARYLAND et al.**

Civ. A. No. M–77–502.

United States District Court,
D. Maryland.

Aug. 2, 1978.

L. Paige Marvel and Paula M. Junghans, Baltimore, Md., for plaintiffs.

Francis B. Burch, Atty. Gen., and James F. Truitt, Jr., Charles R. Taylor, Jr., and Marc K. Cohen, Asst. Attys. Gen., Baltimore, Md., for defendants.

## MEMORANDUM

JAMES R. MILLER, Jr., District Judge.

The twelve named plaintiffs, female social workers (nine) and psychiatric nurses (three), are classified employees of the defendant public health authorities [1] assigned to the Prince George's County Directorate of Mental Health to provide primary psychotherapeutic health care to patients of the Directorate. They allege that the defendants violate Title VII, 42 U.S.C. § 2000e et seq.; the Equal Pay Act of 1963, 29 U.S.C. § 206(d); and 42 U.S.C. § 1983 by paying to social workers and nurses (allegedly professions populated by women) less money than to psychologists (allegedly a profession populated by men) for substantially the same line-staff or primary health care responsibilities. Pending before the court is the plaintiffs' motion for certification of themselves as representatives of a class of thirty-one plaintiffs, namely all past and present social workers and nurses

1. Named generally are the State of Maryland, the Department of Health and Mental Hygiene and two of the agencies of that Department, the Maryland Department of Personnel, Prince George's County, Maryland, and various state or county officials.

employed in the Directorate (listed Paper 33, PX B), to prosecute the Title VII claim.[2] Paper 33.

Although a hearing has been requested, the court believes none is required. Local Rule 6.

## I

## THE TITLE VII CASE [3]

■ In their Amended Complaint, the plaintiffs allege:

"The actions of the Defendants in creating and utilizing a job classification system based on traditionally male and female occupations without regard to the work actually performed by the Plaintiffs and other team members, in paying the Plaintiffs substantially less in base and supplemental compensation than that paid to male team members, pursuant to the job classification system aforesaid, and in imposing terms and conditions of employment different from those imposed upon male team members constitute discrimination against the Plaintiffs on the basis of sex in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–2(a)(1) and (2)."

Amended Complaint ¶ 14, Paper 19.

This allegation encompasses both a complaint of disparate treatment of men and women in the creation of the classification scheme and the concomitant assignment of salary levels and other terms of employment and also a complaint of disparate effect on men and women without business necessity in the use of the present classification scheme. *See generally International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).[4]

2. A suit to enforce the Equal Pay Act may not be prosecuted as a Rule 23 class action since 29 U.S.C. § 216(b) requires written consent to be made a party to such a suit. In addition to the backpay relief available in both Title VII and Equal Pay Act suits, the latter Act authorizes statutory liquidated damages in an amount equal to the backpay award. 29 U.S.C. § 216(b). Consequently, a jury trial of right is available under the Equal Pay Act, but none has been prayed here.

As to the § 1983 claims, no punitive or compensatory damages are demanded, and the required proof of intent is generally a more difficult burden to meet than that under Title VII standards. Plaintiffs shall inform the court by letter whether and, if so, why they desire to hold the § 1983 claim open on the docket.

3. No opinion is expressed at this time on the similarity or dissimilarity of the legal analyses resulting in liability under Title VII and the Equal Pay Act. For examples of the Equal Pay Act analysis, see *Corning Glass Works v. Brennan,* 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *Brennan v. Victoria Bank & Trust Co.,* 493 F.2d 896 (5th Cir. 1974) (education and experience); *Wirtz v. Citizens First National Bank,* 58 CCH Lab.Cas. ¶ 32,050, 1 EPD ¶ 9867 (D.Tex.1968) (education); 29 C.F.R. §§ 800–800.166 (1977).

4. There the *Teamsters* court wrote:

" 'Disparate treatment' such as alleged in the present case is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of dis-criminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. *See, e. g., Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 265–266 [97 S.Ct. 555, 563–564, 50 L.Ed.2d 450]. Undoubtedly disparate treatment was the most obvious evil Congress had in mind when it enacted Title VII. See, *e. g.,* 110 Cong.Rec. 13088 (1964) (remarks of Sen. Humphrey) ('What the bill does . . . is simply to make it an illegal practice to use race as a factor in denying employment. It provides that men and women shall be employed on the basis of their qualifications, not as Catholic citizens, not as Protestant citizens, not as Jewish citizens, not as colored citizens, but as citizens of the United States').

"Claims of disparate treatment may be distinguished from claims that stress 'disparate impact.' The latter involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. See *infra,* at 22. Proof of discriminatory motive, we have held, is not required under a disparate impact theory. Compare, *e. g., Griggs v. Duke Power Co.,* 401 U.S. 424, 430–432 [91 S.Ct. 849, 853–854, 28 L.Ed.2d 158], with *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–806 [93 S.Ct. 1817, 1824–1826, 36 L.Ed.2d 668]. See generally Schlei & Grossman, Employment Discrimination Law 1–12 (1976); Blumrosen, Strangers in Paradise: *Griggs v. Duke Power Co.* and the Concept of Employment Discrimination,

To the extent plaintiffs pursue the disparate treatment analysis, proof of discriminatory intent in the creation of the classification scheme will be both crucial, *id.*, and also invariable from plaintiff to plaintiff.

To the extent the plaintiffs pursue the disparate impact analysis,[5] proof that the present classification scheme has a discriminatory effect, usually a statistically based proof, would be applicable to all plaintiffs.[6] Similarly, the defendants proffer no explanation of how their proof on job relatedness of the classification scheme would vary for consolidated individual claims or for a class suit. Indeed, it seems that proof of the job relatedness of the employment practice of employing a mix of professionally trained individuals to perform the same tasks might necessitate a general evaluation of the agency's current, past and potential missions and of the professions' relative strengths and weaknesses. Proof of the job relatedness of the alleged practice of paying more to holders of degrees at the Ph.D. or masters level in psychology than to holders of equivalent degrees in social work or nursing might necessitate a general evaluation of supply and demand factors in the respective work forces and labor markets, irrespective of whether the suit is handled as a collection of consolidated individual claims or a class action. Finally, plaintiffs' proof of an equally effective alternative practice would also vary little, if any, from an individual to a class based case.

The Title VII claims appear to be ones common to all members of the purported class.

## II

██ The plaintiff bears the burden of showing that the prerequisites of Rule 23, F.R.Civ.P., are satisfied: (a) an adequate class definition, (b) numerosity, (c) common questions of law or fact, (d) typicality, and (e) satisfaction of one paragraph of Rule 23(b). *E. g., Duncan v. State of Maryland*, 78 F.R.D. 88 (D.Md.1978); *Byrd v. Local 24, I. B. E. W.*, 14 EPD ¶ 7761 (D.Md.1977).

### A. Class Definition

With two exceptions affecting five proposed class members, the thirty-one[7] class members are identified by name in Plaintiff's Exhibit B, and no definitional problem is posed.

██ Two proposed class members left the employ of defendants more than 180 days prior to November 24, 1975, the day on which named plaintiffs filed their administrative charges of discrimination with the EEOC and the Maryland Commission on Human Relations. PX B (Marcia Dienelt, Nov. 1973-Mar. 18, 1975; Joan Gordon, Nov. 21, 1973-May 13, 1975). Although a person

---

71 Mich.L.Rev. 59 (1972). Either theory *may, of course, be applied to a particular set of facts.*"
431 U.S. at 335-36 n. 15, 97 S.Ct. at 1854.

**5.** *Dothard v. Rawlinson*, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977), summarized the shifting burden in this analysis:

"Those cases make clear that to establish a prima facie case of discrimination, a plaintiff need only show that the facially neutral standards in question select applicants for hire in a significantly discriminatory pattern. Once it is thus shown that the employment standards are discriminatory in effect, the employer must meet 'the burden of showing that any given requirement [has] . . . a manifest relationship to the employment in question.' *Griggs v. Duke Power Co., supra*, 401 U.S. at 432, 91 S.Ct. [849] at 854. If the employer proves that the challenged requirements are job related, the plaintiff may then show that other selection devices without a similar discriminatory effect would also 'serve the employer's legitimate interest in "efficient and trustworthy workmanship." ' *Albemarle Paper Co. v. Moody, supra*, 422 U.S. at 425, 95 S.Ct. [2362] at 2375, quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801, [93 S.Ct. 1817, 1823,] 36 L.Ed.2d 668."

*Id.* 431 U.S. at 329, 97 S.Ct. at 2726. Note that in the third step plaintiff need only prove that an equally effective alternative exists, not that the challenged practice was purposefully selected to discriminate. Such a showing of purposeful selection would make a case of disparate treatment.

**6.** In view of PX B–D, a motion for summary judgment may be appropriate.

**7.** *Another class member may be identified through further discovery.* Paper 33, Pl. Mem. 3 n. 1.

to whom the Title VII defendants are liable may win backpay for a period extending back two years prior to the filing of the administrative charge, 42 U.S.C. § 2000e–5(g), the defendants are liable only to persons injured within 180 days of the filing of the charge of discrimination. *Id.* 2000e–5(e); *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 246 (3d Cir. 1975); *Byrd*, 14 EPD at 5752. *See United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). These two individuals must be excluded from the class.

■ A more intriguing question is posed by the plaintiffs' proposal to include three male social workers in the plaintiff class. PX B (James Reinsel, Russell Wade, Edwin Wilmslow). Conceivably the Article III injury in fact component of standing could be satisfied by the assertions that but for defendants' sexually discriminatory job classification scheme there would be only one job classification, that the hypothetical job would pay more than the current job, and that these three male social workers would be so employed. *Cf., e. g., O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). However, the language of Title VII creates a claim for relief only when the employer discriminates "against any individual with respect to his compensation . . . because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e–2(a)(1). *Accord, Cox v. Allied Chemical Corp.*, 538 F.2d 1094, 1099 (5th Cir. 1976); *EEOC v. Beaver Gasoline Co.*, 14 FEP Cases 1343 (E.D.Pa.1977). These three male individuals must be excluded from the class. (Since plaintiffs requested a further opportunity to submit argument on this issue, a motion to expand the class may be filed not less than one month prior to the pretrial conference date.)

### B. Numerosity

■ The proposed class now numbers twenty-six of whom twelve are already named plaintiffs. This number is within that middling range where the determination of the practicality of joinder, Rule 23(a)(1), F.R.Civ.P., can be made only in light of the other Rule 23 prerequisites and the particular facts of a case. *E. g., Duncan, supra.*

A significant factor in this Title VII case is that if class certification were denied and the absent similarly situated women permitted to intervene as additional named plaintiffs, then the delay and distraction resulting from their exhaustion of their Title VII administrative remedies prior to their intervention here might impede the disposition of this case. No good reason for such a result has been offered. Rule 1, F.R.Civ.P., mandates that the Rules ". . . be construed to secure the just, speedy, and inexpensive determination of every action."

### C., D. Common Questions, Typicality

From the discussion in Part I, *supra*, it is apparent that there are common questions of fact and perhaps of law. In addition, should the plaintiffs prevail, the remedy of establishment of a restructured job classification scheme would apply to all. *Byrd, supra* at 5747–5748.

### E. Representativeness

Based on a review of the pleadings filed in this case, the court believes that plaintiffs' counsel are suitably experienced, skilled, and diligent. The named plaintiffs clearly have a personal stake in this litigation, and no antagonism between the interests of the named plaintiffs and the class appears at this time. *Id.* at 5748–5749.

### F. Rule 23(b)(2)

Finally, if the claims of the plaintiffs be assumed meritorious for purposes of the class certification motion, as they must be, then the defendants have acted on a ground applicable to the class as a whole and final injunctive or declaratory relief would be appropriate. *Id.* at 5749. It is not necessary to decide whether certification under

Rule 23(b)(3), as requested, would also be appropriate.