Agee ALLEN and Ronald Battle,
Plaintiffs,

v.

William M. ISAAC, Chairman, Federal
Deposit Insurance Corporation,
Defendant.

No. 81 C 911.

United States District Court,
N.D. Illinois, E.D.

Aug. 2, 1983.[*]

---

[*] The description of the certified class was amended in a subsequent opinion, 100 F.R.D. 373.

Paddy Harris McNamara, Chicago, Ill., for plaintiffs.

Ann Wallace, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

This is a class action brought on behalf of black bank examiners employed nationwide by the Federal Deposit Insurance Corporation ("FDIC") alleging that the FDIC utilizes discriminatory training and promotion procedures. The primary allegation of the one count amended complaint is that the Progress Evaluation Examination ("PE"), ostensibly a prerequisite to promotion from a grade GG–9 assistant bank examiner to a grade GG–11 commissioned examiner, is "wholly subjective" and neither standardized nor validated as allegedly required by the Uniform Guidelines on Employee Selection Procedure ("Guidelines"), 20 C.F.R. §§ 60–3 *et seq.*

The PE is a three and one-half day oral and written examination which is administered in Washington, D.C. by a panel of three commissioned bank examiners. The minimum standard for eligibility to take the PE is completion of at least one year as a GG–9 assistant bank examiner. According to an in-house FDIC review of the PE, panel members are instructed to judge

the candidate's FDIC and banking background and experience, extent of the method of preparation for the evaluation, judgment and analytical ability, initiative, personality and their [sic] ability to grow professionally and to represent the Corporation as a Commissioned Examiner.

Kieper Report at p. 17. Plaintiffs cite as discriminatory this subjective, non-numerical grading criteria.

Persons who take the PE receive one of three ratings: (1) "favorable"—which leads to immediate promotion; (2) "deferred"—which leads to promotion in the future; and (3) "reevaluate"—promotion can occur only subsequent to another PE. Generally a favorable or deferred rating on the PE is required for advancement to commissioned bank examiner plus a final recommendation by the applicant's Regional Director. Candidates who receive a reevaluate rank must retake the PE before promotion is possible. However, the Regional Directors apparently may promote reevaluate candidates and waive the taking of another PE.

Plaintiffs claim that in the Chicago region at least four white reevaluates were promoted to commissioned examiner without retaking the PE. Black reevaluates allegedly are not similarly favored. Rather, plaintiffs say that approximately 50% of all black assistant examiners who take the PE receive either deferred or reevaluate ratings and that those blacks who are deferred experience longer delays in promotion than do nonblack deferred candidates. The 50% "pass" rate for blacks allegedly is in contrast to a 77.9% "pass" rate for whites.

Also alleged is that the FDIC has haphazard and subjective training procedures which inappropriately and discriminatorily prepare blacks to take the PE. According to the plaintiffs, this "stacked deck" accounts for the fact that when this suit was instituted, fewer than 35 of the 2000 commissioned examiners in the FDIC network were black.

Jurisdiction is invoked pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 *et seq.* ("Title VII"). A wide range of relief is requested including a

declaration that the PE is invalid due to its alleged discriminatory impact on blacks, negative and positive injunctions seeking promotions, back pay, discontinuance of the PE and institution of nondiscriminatory training and promotion practices.[1]

Presently before the Court is a motion for certification of a class pursuant to Fed.R. Civ.P. 23(a) and 23(b)(2). The class proposed is very broad and is described as:

> All black persons employed by the FDIC as assistant bank examiners or commissioned examiners who have been or will be adversely affected by the promotional policies of the FDIC complained of in this action.

That class is said to include all black assistant bank examiners who took the PE during a relevant time period and initially were rated as either deferred or reevaluate, those who will take the PE and be rated deferred or reevaluate and those who were or will become eligible to take the PE but whose ambition is "chilled" allegedly due to the PE's discriminatory nature.

The named plaintiffs, Agee Allen ("Allen") and Ronald Battle ("Battle"), are employed by the FDIC in its Chicago region. In 1980, Allen and Battle took the PE and each was rated as reevaluate. Allen was promoted to the rank of commissioned bank examiner after a delay of approximately three years. Battle has never been promoted and has recently received a notice of termination. Both Allen and Battle complied with 29 C.F.R. § 1613.602(a), which requires federal employees to file administrative charges of *class* discrimination with an Equal Employment Opportunity ("EEO") counselor within 90 days of the alleged discriminatory action.

Also before the Court are motions to intervene brought by Severa Jones ("Jones") and Irvin Faust ("Faust"). Jones, employed by the FDIC in the Philadelphia region, received a deferred rating on the PE on September 9, 1979. He brought an informal complaint of *individual* discrimina-

tion within thirty days of the PE evaluation, as is required by 29 C.F.R. § 1613.-214(a)(1)(i). Jones was promoted approximately six months after his deferral. Faust, a New York region FDIC employee, was minimally eligible to take the PE in September of 1978 but he did not take it until November 1981. He received a reevaluate rating and has not been promoted.

For the reasons stated below, the motion for certification of a class pursuant to Fed. R.Civ.P. 23(b)(2) is granted. However, the contours of the proposed class are narrowed to include

> All black assistant bank examiners employed nationwide by the FDIC who took the Progress Evaluation Examination for promotion to commissioned bank examiner on or after August 30, 1979 and were rated either as "deferred" or "reevaluate" or who will take the Progress Evaluation Examination during the pendency of this litigation and will be rated either as "deferred" or "reevaluate."

Thus, the class certified will include black assistant bank examiners who were promoted to commissioned examiners, but only after some period of delay following a deferred or reevaluate rating on the PE. As of the date of filing, that number is 17. *See* appendix for list. Incident to the litigation, a determination will be made as to what period of delay, if any, is discriminatory and what period is nondiscriminatory. *See Hazelwood School District v. United States,* 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977); *Clark v. Chrysler Corp.,* 673 F.2d 921 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 161, 74 L.Ed.2d 134 (1982) (statistical evidence on disparate impact of alleged discrimination must demonstrate a "significant" or "substantial" disparity). Those class members who experienced nondiscriminatory delays will be excluded from the class.

The class does not include the so-called chilled category of persons who did not or will not take the PE although minimally

---

1. If plaintiffs prevail, some declaratory and injunctive relief may be unnecessary due to the  FDIC's intention to stop using the PE.

eligible in the relevant time period. No named plaintiff shares a similar claim or injury with an assistant bank examiner who failed to take the PE.

The motions for intervention by Jones and Faust are denied. Venue is improper as to them and permissive joinder is denied. *See* Fed.R.Civ.P. 20. Both Jones and Faust, however, are proper members of the class at this time.

## I. The Class Meets the Requirements of Fed.R.Civ.P. 23(a)

▇ For purposes of determining class certification, the allegations are taken as true and the merits of the complaint are not examined. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The requirements of certification are governed by Rule 23 of the Federal Rules of Civil Procedure. Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Each requirement is met here.

### A. Numerosity and Impracticability of Joinder

▇ The parties to this litigation, although seemingly at odds on all aspects of the case, most strongly disagree on the number of black assistant bank examiners, if any, who should be counted for numerosity purposes. The disagreement centers on not just "who" should be counted, but "when" the counting should begin. Following extensive briefing, which included surreplies and superceded and supplemented filings, the Court ordered the parties to submit affidavits in an attempt to nail down the numerosity factor. Thereafter, a hearing on numerosity was held. Unfortu-

nately, no precise counting emerged and a post-hearing flurry of letters was sent to the Court which challenged and rechallenged representations made about specific persons. Thus, the Court still is unsure whether several black assistant bank examiners who are proposed class members took the PE. In one case, it is unclear whether the member proposed is black or white. Accordingly, all "questionable" class members are ignored for numerosity purposes, without prejudice to the right of such persons to join the class if, in fact, they took or will take the PE during the relevant period with a resultant rank of either deferred or reevaluate.

The Court finds that at least 17 black assistant bank examiners may be counted for numerosity purposes. Four separate considerations were required to reach that number: (1) setting the temporal beginning date of the class; (2) setting the temporal ending date for purposes of numerosity only; (3) selecting the proper categories of aggrieved persons; and (4) evaluating the number of persons who fall within the two dates and categories to determine if their joinder is impracticable. Although the number of members is not great, their geographical dispersion in seven cities makes joinder impracticable.

### (1) The temporal beginning date is August 31, 1979.

▇ The FDIC argues that if certification is granted, the class should be opened as of January 2, 1980—90 days before Allen and Battle filed class complaints. Plaintiffs argue that the proper opening date is August 31, 1979—90 days before Jones, an unnamed member, filed an individual complaint with an EEO counselor. A federal employee intending to bring a Title VII class action must consult an EEO counselor within 90 calendar days of the alleged individual injury. 29 C.F.R. § 1613.602(a). Unlike a federal employee's *class* complaint, a federal employee is required to file an *individual* claim of Title VII discrimination within 30 days of injury. 29 C.F.R. § 1613.-214(a)(1)(i).

Generally, the beginning date for a Title VII class is keyed to the required administrative filing date of the class representative. *See, e.g., Movement for Opportunity and Equality v. General Motors Corp.,* 622 F.2d 1235 (7th Cir.1980); *Romasanta v. United Air Lines, Inc.,* 537 F.2d 915 (7th Cir.1976), *aff'd sub nom. United Air Lines v. McDonald,* 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977). Here, the FDIC received a request on April 1, 1980 from Allen and Battle for consultation with the FDIC's EEO counselor regarding their allegations of class discrimination. The timeliness of those requests is unchallenged. The usual procedure for dating the opening of this class, therefore, would be to count back 90 days from April 1, 1980 to January 2, 1980. Included in the class would be all persons who *could have* filed a discrimination charge on or after January 2, 1980. It is not necessary that each class member actually files an administrative complaint. *Movement for Opportunity and Equality v. General Motors, supra* at 1248; *Bowe v. Colgate Palmolive Co.,* 416 F.2d 711, 720 (7th Cir.1969).

The Seventh Circuit recognizes an exception to the above dating procedure: The temporal beginning of a Title VII class can be controlled by complainants *who filed earlier* than the date on which the class representative filed. In this Circuit, such complainants need not be intervening plaintiffs. *McDonald v. United Air Lines, Inc.,* 587 F.2d 357, 361 (7th Cir.1978), *cert. denied sub nom. United Air Lines v. Buix,* 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 303 (1979). *But see Inda v. United Air Lines,* 565 F.2d 554 (9th Cir.), *cert. denied sub nom. United Air Lines v. Kathleen C.,* 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 389 (1977) (earlier-filing complainants must intervene if their filing dates are used to set the class' beginning date). The rationale for permitting the filing date of a person other than the representative to be used to open a Title

VII class is that the employer is not prejudiced: The employer was notified by the unnamed, earlier-filing plaintiff that one of his policies allegedly is discriminatory. *McDonald v. United Air Lines, Inc., supra.*

*McDonald* specifically provides that it is immaterial whether the earlier-filing complainant brought charges denominated as *class* charges or *individual* charges. *Id.* at n. 11. *See also Inda v. United Air Lines, supra; Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239 (3rd Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). The cases do not say, however, where, as here, the earlier-filing plaintiff lodged an individual complaint whether the opening date should be extended back an extra thirty days or ninety days. No doubt the reason for the omission is that under the facts of those cases no choice was required. The employees in *McDonald, Inda* and *Wetzel* worked in private industry. Unlike the filing time distinctions for individual versus class complaints imposed on public sector employees, private sector employees currently are required to file administratively within 180 days of the discriminatory act irrespective of whether the complaint is brought as an individual or class action. 42 U.S.C. § 2000e–5.

Applying *McDonald* to the instant case, Jones filed a formal administrative complaint of *individual* discrimination on November 30, 1979, subsequent to a PE rating of deferred.[2] The FDIC argues that if Jones' complaint must function as a gatekeeper, the class should begin on October 30, 1979—thirty days before Jones filed his individual complaint. To the contrary, the plaintiffs argue that the class should begin on August 31, 1979—90 days before Jones' filing. In the plaintiffs' view, the FDIC was fairly apprised by the administrative report and recommendations issued on Jones' individual complaint that class-type allegations of promotional discrimination

2. The FDIC received Jones' request for informal EEO counseling on October 26, 1979, approximately 30 days after his deferred rating was received. The plaintiffs, however, have not structured their "earlier-filing" argument on the October 26 informal filing date. Rather they cite his November 30, 1979 formal filing date as key. Therefore, the Court will not frame the class in reference to the October 1979 date.

were made and investigated. The Court agrees.

Subsequent to Jones' complaint and its investigation, an attorney examiner issued a Recommended Decision. The concluding recommendation was that

the Complainant [Jones] has established by a preponderance of the evidence that his Agency discriminated against *him* on the basis of race when it deferred his promotion to Commissioned Bank Examiner, GG–11 for a period of six months following his completion of the PE. (emphasis added).

That recommendation is stated in terms of individual discrimination, consistent with Jones' complaint of individual discrimination.

The body of the Decision, however, is overwhelmingly cast in terms of class and not individual discrimination. For example, the Decision states:

Complainant claims that the use of the results of the Progress Evaluation has a *discriminatory impact* upon Black Examiners. (emphasis added).

One section is captioned "Impact of Progress Evaluation on Black Examiners." Included in it is a compilation of the results of the PE relative to the promotion rates of minority examiners for the years 1977–1980. After analyzing those statistics and considering problems with sample size and amounts of promotion delay, this finding was made:

Considering the less than ⅘ rate for Blacks and the closeness of the group in qualifications, I find that the Complainant has established a *prima facie* case based upon the *adverse impact* of the utilization of the results on the Progress Evaluation upon the Black candidates for promotion to the position of Bank Examiner, GG–11. (emphasis added).

Furthermore, the FDIC was aware that Jones' complaint had triggered an investigation into the possible *discriminatory impact* of the PE. In the examiner's Recommended Decision, she refers to the FDIC's Memorandum of Law, filed incident to the investigation of Jones' complaint. That Memorandum, at pp. 17–18, states

The Agency claims that if the Guidelines [Uniform Guidelines on Employee Section Procedure] are applicable, Black examiners are actually promoted at a rate which does not indicate *adverse impact* under the Guidelines. (emphasis added).

Based on the administrative decision on Jones' complaint, the Court finds that the FDIC had notice before Allen and Battle filed their class complaints that the PE was alleged to have a discriminatory impact on Black assistant examiners. Moreover, it appears that the FDIC had some opportunity to respond to those early class-type charges. Therefore, for purposes of opening this class, Jones' complaint will be treated as a class complaint: The temporal beginning of the class certified is August 30, 1979.

In *McDonald,* the Seventh Circuit distinguished the case of an earlier-filing individual complainant who subsequently institutes a lawsuit solely on his or her behalf from an earlier-filing complainant who does not personally sue. The filing date of the former would not be available to define the temporal beginning of a class action. 587 F.2d at 361, n. 9. *See also Inda v. United Air Lines, Inc.,* 83 F.R.D. 1 n. 9 (N.D.Cal. 1979). Presumably, the Seventh Circuit, like the Northern District of California in *Inda,* also would not permit the use of an earlier filing date where the complainant had settled the suit prior to institution of the class action. None of those distinctions are relevant to Jones' case, however. Jones has not filed an individual court action. Although Jones was promoted before this class action began, a promotion is not analogous to a settlement. Relative to settlement, the complainant gives up his or her claims in exchange for some agreed action or benefit. A promotion, although a benefit, does not necessarily wipe out any injury suffered if the delay between the PE and promotion was discriminatory. Thus, Jones might be entitled to receive back pay, seniority rights and similar compensation if this suit is resolved against the FDIC and it is shown that Jones suffered a discrimina-

ry delay prior to his promotion to commissioned examiner.

Furthermore Jones' promotion does not run afoul of the "continuing violation" theory. The defendants argue that because Jones had been promoted when the suit was filed, no continuing Title VII violation was present as to him and, therefore, his filing time should not control. The case law is inapposite. So long as the employment relationship is maintained through the proper number of days preceding the *administrative* filing, a complainant who charges discriminatory failure to promote thereafter suffers the present effects of a continuing discriminatory policy. *See, e.g., In re Consolidated Airline Cases,* 582 F.2d 1142 (7th Cir.1978), *rev'd in part sub nom. Zipes v. Trans World Air Lines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). *See also Stewart v. CPC International, Inc.,* 679 F.2d 117 (7th Cir.1982). In Jones' case, the employment relationship was never severed. His promotion alone does not cut off his potential recovery for any discriminatory impact of the PE.

### 2. The Temporal Ending Date is February 10, 1981.

No cases were located which tell how to decide the closing date of a Title VII class for numerosity purposes. Probably the date most frequently used is the date on which suit is filed. Here the suit was filed on February 10, 1981. The plaintiffs, however, urge the Court to extend the cutoff up to and including the date upon which certification is granted. There is a certain appeal to that suggestion. If the number of aggrieved persons has increased between the time of filing and certification, whatever roadblocks to joinder may have existed at filing are heightened by an increased number of injured parties.

It is, however, unnecessary for the Court to consider the plaintiffs' proposal of testing numerosity up to the certification date. Using the filing date, a sufficient number of members are included to make joinder impracticable. *See infra.* The temporal ending date for numerosity purposes is February 10, 1981.

3. *Persons who did not take the PE between August 31, 1979 and February 10, 1981, although minimally eligible, cannot be counted for numerosity purposes.*

■ Theoretically, there may be no principled reason why the so-called chilled category of GG–9 black assistant bank examiners should not be counted. Unlike chilled applicants for employment, those who are minimally eligible to take the PE but do not take it during the relevant period are a discrete, easily quantifiable group. *Cf. International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 368, 97 S.Ct. 1843, 1871, 52 L.Ed.2d 396 (1977) (identification of non-applicant members would be an impossible task); *Quigley v. Braniff Airways, Inc.,* 85 F.R.D. 74, 84 (N.D.Tex.1979) (blacks allegedly deterred from applying for position as airline flight attendants not included in proposed class due to identification problems, speculative nature of backpay, etc.). *Accord Simer v. Rios,* 661 F.2d 655 (7th Cir.1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982) (class certification denied to proposed class of individuals allegedly chilled in the exercise of first amendment rights).

Nonetheless, the chilled category is excluded for numerosity purposes and as a subclass due to a failure of typicality. *See* discussion *infra.* The chilled category and assistants who took and "failed" the PE do not "possess the same interest and suffer the same injury." *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 405, 97 S.Ct. 1891, 1897, 52 L.Ed.2d 453 (1977). *See also General Telephone Co. v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982) (employee not promoted allegedly due to his Mexican-American heritage cannot represent a class on behalf of all Mexican-American applicants for hire; typicality is lacking among the two groups). Obviously, therefore, the chilled candidates cannot be counted for numerosity purposes.

*4. The joinder of seventeen persons is impracticable in the context of this litigation.*

■ Once the beginning and ending dates of August 31, 1979 and February 10, 1981 are fixed and the class is limited to only black assistants who actually took the PE between those dates with a consequent deferred or reevaluate rating, 17 persons emerge as potential injured parties. *See* Appendix. The requirement of Fed.R. Civ.P. 23(a)(1) is that whatever the number, their joinder must be impracticable. Impracticability is determined in the context of the particular litigation. *See* 3B J. Moore & J. Lucas, Moore's Federal Practice ¶ 23.04(1) (1982).

Where the class is large, numbers alone are dispositive of impracticability. *Edmondson v. Simon,* 86 F.R.D. 375 (N.D.Ill. 1980), *vacated* 76 C 4591 (N.D.Ill. October 24, 1982) (Hart, J.) (class decertified subsequent to *General Telephone Co. v. Falcon* ). Although classes similarly small have been certified, *see, e.g., Arkansas Education Association v. Board of Education,* 446 F.2d 763 (8th Cir.1971) (class of 20); *Cypress v. Newport News General and NonSectarian Hospital Association,* 375 F.2d 648 (4th Cir. 1967) (class of 18); *Rosario v. Cook County,* 82 C 5244 (N.D.Ill. May 24, 1983) (class of 20); *Davy v. Sullivan,* 354 F.Supp. 1320 (M.D.Ala.1973) (class of 10), clearly this class should not be certified solely on the strength of its numbers.

Lacking big numbers, courts have turned to other factors to test the impracticability of joinder. One factor weighs heavily here—the geographic dispersion of the proposed class members. If all members are not found within the same district, impracticability of joinder is increased. *Compare Garcia v. Gloor,* 618 F.2d 264 (5th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981) (class of 34 certified because located throughout the country) *with Winokur v. Bell Federal Savings and Loan Association,* 16 Fed.R.Serv.2d 65 (Callaghan) (N.D.Ill.1972) (certification denied to class of 86 S & Ls all located in Chicago area). In the instant case, the 17 black assistants are scattered throughout the United States. They work out of seven FDIC regional offices in seven different states. It would be extremely difficult to individually join the members of this group and expect each member to actively and meaningfully participate in the ensuing litigation. For that reason alone, joinder is impracticable and Rule 23(a)(1) is satisfied.

Courts also have considered factors other than geographic dispersion to support a finding of impracticability where the number of class members is small. Such factors include the ability of the individuals to press their own claims, the practicality of forcing relitigation of common issues and the administrative difficulties which attend joinder. *See, e.g., Paxton v. United National Bank,* 688 F.2d 552, 559–61 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983); *Jordan v. County of Los Angeles,* 669 F.2d 1311, 1319–20 (9th Cir.), *vacated on other grounds,* —— U.S. ——, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982). Complicating an employee's ability to pursue his own claim, is the fear that his job will be jeopardized by bringing his employer to court. *See, e.g., Horn v. Associated Wholesale Grocers, Inc.,* 555 F.2d 270, 275 (10th Cir.1977); *Arkansas Educational Association v. Board of Education, supra; Cypress v. Newport News General and NonSectarian Hospital, supra.* Similarly, the relitigation of common issues necessarily increases the cost of litigation, whereas a proper class action is an economic and administrative savings device. *See, e.g., Swanson v. American Consumer Industries, Inc.,* 415 F.2d 1326 (7th Cir.1969).

Forcing the 17 persons included in this class, each of whom has common claims and defenses, to separately pursue those claims and defenses cannot be justified practically or economically. *Lazarus v. Maryland,* 79 F.R.D. 633 (D.Md.1978). Furthermore, the limited and public resources of the FDIC would best be protected by certification of the class. This class of 17 is sufficiently numerous that joinder is impracticable.

## B. Commonality

■ Commonality is achieved with the existence of a common question of either fact or law. Not all factual or legal questions raised in the lawsuit need be common so long as a single issue is common to all class members. *See, e.g., Midwest Community Council v. Chicago Park District,* 87 F.R.D. 457 (N.D.Ill.1980). A class action will not be defeated solely because there are some factual variations among the members' grievances. *Patterson v. General Motors Corp.,* 631 F.2d 476 (7th Cir.1980), *cert. denied,* 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981).

■ Thus, it is irrelevant for commonality purposes that some members were rated deferred and others were rated reevaluate. Similarly, it is unimportant that some members eventually were promoted and others were not or that all members experienced varying amounts of delay in promotion. Each subgroup challenges the discriminatory impact of the PE and whatever discriminatory delay it suffers or suffered.

In order to prove that the PE has a disparate impact on black applicants who seek promotion to commissioned bank examiner, plaintiffs must prove that the PE should be validated and cannot be validated as required by the Guidelines. They also must prove that the PE and other factors incident to promotion, such as performance ratings, training programs and discretion vested in the panel of evaluators and Regional Directors, combine to select non-blacks for promotion at a significantly higher rate than blacks. The burden then shifts to the FDIC to show that the PE and other selection criteria relate to job performance. Finally, the plaintiffs may then show that sifting procedures other than the PE could achieve the FDIC's purposes without discriminatory effect. *See Dothard v. Rawlinson,* 433 U.S. 321, 329, 97 S.Ct. 2720, 2727, 53 L.Ed.2d 786 (1977). All these determinations present both factual and legal questions common to the representatives and the class of assistants who took the PE and were rated deferred or reevaluate.

The FDIC argues that where, as here, the class sought is national but the ultimate decision to promote is left to the discretion of each Regional Director, there can be no commonality across regions. Carried to an extreme, the FDIC's circular reasoning would shield the promotional impramatur of a Regional Director who acts in an overtly discriminatory manner because that Director is vested with great discretion. Even if the logic were good, at this stage of the proceedings it is not established that the Regional Directors are largely autonomous or that the role of the PE in promotion is nominal relative to the Regional Director's approval. Furthermore, the plaintiffs are entitled to show that the FDIC could lessen the impact of any discrimination by requiring, *e.g.,* the Regional Directors to adopt more standardized, less discretionary criteria for promotion without sacrificing quality control. The commonality requirement of Rule 23(a)(2) is met.

## C. Typicality

■ Typicality does not require that the claims or defenses of the class representative be identical or perfectly coextensive with the claims or defenses of the members; substantial similarity is satisfactory. *See, e.g., Frankford Hospital v. Blue Cross of Greater Philadelphia,* 67 F.R.D. 643 (E.D. Pa.1975). In *General Telephone Co. v. Falcon, supra,* Falcon claimed that he was not promoted due to his ethnicity. The Supreme Court rejected on grounds of atypicality his attempt to represent other Mexican-Americans who failed to apply or were not hired by his employer. The message of *Falcon* is that typicality must be scrupulously sought such that the claims and injuries of the representative assuredly are typical of the class he or she seeks to represent. *Id.* 457 U.S. at 161, 102 S.Ct. at 2373. *See also East Texas Motor Freight Systems, Inc. v. Rodriguez, supra,* 431 U.S. at 405–406, 97 S.Ct. at 1897–1898.

Allen and Battle took the PE and each was rated as reevaluate. Clearly their claims are typical of other blacks who received reevaluate ratings. Allen and Battle

also say that their claims and injuries are typical of black candidates who took the PE and received a deferred rating. The Court agrees. In fact, their primary claim is identical to that of the deferred members: failure to achieve for allegedly discriminatory reasons immediate promotion to commissioned bank examiner subsequent to taking the PE. Both deferred and reevaluate groups will focus on the PE. Each group shares an identical burden in the type of proof it needs to show that the PE has a disparate impact on blacks.

Although the deferreds and reevaluates suffer varying lengths of delay in promotion, their alleged injuries are typical: some amount of discriminatory delay. Each group must prove what period of delay in promotion is discriminatory. The difference in proof of injury required by a deferred candidate versus a reevaluate candidate is only one of degree.[3] The Court finds that the claims of the representatives are typical of both reevaluate and deferred members.

Whether the claims of the representatives are typical of the chilled category of putative members necessitates a different answer. Both the PE takers and allegedly chilled assistant bank examiners claim that their employment opportunity has been undermined due to their race and the FDIC's discriminatory practices. However, the claims of those who did not take the PE require a focus which may touch only tangentially on the PE. Rather, the nonapplicants likely would need to prove that "but for" the FDIC's discriminatory policies, including the PE process, he or she would have taken the PE. *See International Brotherhood of Teamsters v. United States, supra* 431 U.S. at 368, 97 S.Ct. at 1871 (1977). Similarly, the type of injury suffered by chilled persons, if any, is different and likely harder to prove. Their injury, compared to the injuries of those who at least took the PE, is in kind and not in degree. The named plaintiffs' claims and injuries are not typical of the claims and injuries of chilled members.

### D. Adequacy of Representation.

▮ Rule 23(a)(4) also requires that the named plaintiff will fairly and adequately represent the interest of the class. The test has two parts: First, a named representative must be capable and have a sufficient interest in the outcome to ensure vigorous advocacy while having no interest antagonistic to the interests of the class. Certification of a class on the grounds of antagonism should be denied only if that antagonism goes to the subject matter of the litigation. *Oneida Indian Nation of Wisconsin v. State of New York,* 85 F.R.D. 701, 706 (N.D.N.Y.1980). Second, counsel for the named plaintiff must be competent. *See General Telephone Co. v. Falcon, supra,* at n. 13; *Susman v. Lincoln American Corp.,* 561 F.2d 86, 90 (7th Cir.1977).

▮ The interests of Allen and Battle are neither divergent nor antagonistic one to another nor to the interests of the class. There is no competition for the position of commissioned bank examiner; theoretically, all qualified assistant bank examiners can be promoted.

The FDIC also argues that the named plaintiffs are not capable of representing the class because of the financial burden of representation. No doubt, Allen and Battle are without unlimited resources for litigation costs. However, if that condition were synonymous with inadequacy of representation, few class actions brought by natural persons would be certified. Apparently, the representatives so far have afforded the cost of nationwide discovery. Furthermore, many putative class members and the representatives' attorney have promised to assist with future expenses. The Court finds that Allen and Battle will adequately represent this class.

Turning to the second prong of the adequacy of representation question, the FDIC vehemently disputes the ability of plain-

---

**3.** For those reasons, the class may advance claims of discriminatory training—at least so long as the named plaintiffs make similar claims.

tiffs' counsel to competently manage this litigation. In support of that position, the FDIC dissects as "improper" or "deficient" virtually every procedural posture and filing adopted by the plaintiffs. Naturally, counsel for the plaintiffs defends her abilities and tactics. In doing so, she details a long list of "mistakes" and "improprieties" allegedly committed by counsel for the FDIC. The Court will justify neither position by specifically discussing the counter-accusations.

Instead, the Court finds that plaintiffs' counsel is competent to adequately represent this class. She has past experience in Title VII matters, albeit not of a class action variety. Based on the history of the relationship between opposing counsel, the Court is sure that the class' representation will be vigorous.

## II. The Class Meets the Requirements of Fed.R.Civ.P. 23(b)(2).

A class action which meets all the terms of Rule 23(a) also must qualify under any one of the subsections of Rule 23(b). Here the proposed class fits squarely within the ambit of subdivision (b)(2), which includes "actions in the civil rights field where a party is charged with discriminating unlawfully against a class." Advisory Committee Notes, Report of the Judicial Conference on the Proposed Rules of Civil Procedure for the United States District Courts, 39 F.R.D. 98, 102 (1966). Indeed, Rule 23(b)(2) was intended precisely to reach such cases, where application of a clearly defined policy is appropriate to final injunctive or declaratory relief, settling the legality of the behavior with respect to the entire class. *Id.* at 109. *See also Dixon v. Quern,* 76 F.R.D. 617, 620 (N.D.Ill.1977).

Plaintiffs seek a declaration that the PE violates Title VII, an injunction against its use pending validation, elimination of racially discriminatory training practices, back pay and promotion for class members adversely affected by these policies and practices. The primary focus of the relief is injunctive. The fact that back pay also is sought is not a bar to Rule 23(b)(2) certifi-

cation. *Senter v. General Motors Corp.,* 532 F.2d 511 (6th Cir.), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976); *Harriss v. Pan American World Airways, Inc.,* 74 F.R.D. 24, 46 (N.D.Cal.1977). Back pay and promotion are equitable remedies and perfectly consistent with the equitable remedy of injunctive relief. *Albermarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Garcia v. Presbyterian-St. Luke's Medical Center,* 80 F.R.D. 254, 272 (N.D.Ill.1978). Neither does the announced intention of the FDIC to discontinue use of the PE foreclose certification under Rule 23(b)(2). Plaintiffs still seek affirmative injunctions, *i.e.,* to require the FDIC to promote to the position of commissioned bank examiner all those black assistant examiners to whom promotion has been wrongfully withheld and to adjust by back pay and other means those assistants who were never promoted or whose promotions were delayed for unlawful periods. Thus, the class of black assistant bank examiners who took the PE and were rated deferred or reevaluate or who will take the PE during the pendency of this litigation and will be rated deferred or reevaluate is properly certified under Fed.R.Civ.P. 23(b)(2).

## III. The Motions of Jones and Faust to Intervene are Denied.

The choice of forum in a Title VII case must be strictly construed in accordance with the venue requirements of 42 U.S.C. § 2000e–5(f)(3). *Richman v. Merrill Lynch, Pierce, Fenner & Smith,* 441 F.Supp. 517 (S.D.N.Y.1977). Section 2000e–5(f)(3) provides, where civil actions are brought under the Equal Employment Opportunity Act:

Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which employment records relevant to such practice are maintained and administered or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful em-

ployment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

■ Jones is employed by the Baltimore office of the Philadelphia, Pennsylvania region. When he took the PE, he received a deferred rating. Approximately six months later he was promoted to commissioned bank examiner. Since his promotion, he has been on assignment in Oklahoma. Faust is employed in the New York region. His rating on the PE was reevaluate and he has never been promoted to commissioned examiner. Thus, if any unlawful employment practice was committed as to Jones or Faust, it occurred in Philadelphia, New York or perhaps in Oklahoma; it did not occur in the Northern District of Illinois. Furthermore, any records which the FDIC maintains relevant to the employment of Jones or Faust are not stored here. Finally, the FDIC's principal office is located in Washington, D.C. and not in this district. Venue in the Northern District of Illinois is improper as to Jones and Faust.

Although more or less conceding the inappropriateness of venue in this district as to them, Jones and Faust nonetheless argue that permissive intervention should be granted. Among their arguments are that: the venue provisions apply only to the original named plaintiffs and not to after-intervenors; intervention may be allowed absent venue consistent with the equitable considerations of permissive joinder, Fed.R.Civ.P. 20; and intervention should be permitted as a preemptive measure in order to preserve their rights to individually sue if class certification is denied.

First, the Court can find no authority for the proposition that venue rules apply only to the original named plaintiffs and not to intervening, later-named plaintiffs. Second, the Court has found that the claims of deferred members are typical of those presented by Allen and Battle who were classified as reevaluate. Allen and Battle will adequately represent the deferred group. Thus adding Jones, who was classified as deferred, would serve no purpose.

Finally, the Court need not consider whether preemptive intervention should be permitted since a class which includes Jones and Faust has been certified. *See also Crown, Cork & Seal Co., Inc. v. Parker,* —— U.S. ——, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) (filing class action tolls applicable statute of limitations permitting members and intervenors to file individual actions if certification is denied). Faust and Jones may not intervene.

IT IS THEREFORE ORDERED that:

1. Plaintiffs' motion to certify a class pursuant to Fed.R.Civ.P. 23(b)(2) is granted in part with respect to

All black assistant bank examiners employed nationwide by the FDIC who took the Progress Evaluation Examination for promotion to commissioned bank examiner on or after August 30, 1979 and were rated either as "deferred" or "reevaluate" or who will take the Progress Evaluation Examination during the pendency of this litigation and will be rated either as "deferred" or "reevaluate."

2. Plaintiffs' motion for class certification is denied to the extent that they seek to certify a class of black assistant bank examiners who, although minimally eligible, have not or will not take the PE during the relevant periods.

3. Motions by plaintiffs Severa Jones and Irvin Faust to intervene are denied without prejudice to their becoming members of the certified class.

4. The parties are ordered to exchange within three weeks of the date of this Memorandum Opinion and Order draft copies of a notice of certification for distribution to class members. On September 6, 1983, the parties will submit to the Court either a single agreed draft of the notice or, if agreement is not reached, separate proposals for the notice.

5. A status hearing will be held on September 9, 1983 at 9:30 a.m.

**58**

APPENDIX: Black examiners counted in the initial determination of the class

| NAME | RATING | REGION |
|------|--------|--------|
| Johnnie Chapman | re* | Atlanta |
| Agee Allen | re | Chicago |
| Ronald Battle | re | Chicago |
| Joseph Knox | re | Chicago |
| Vernon Jones | defer | New York |
| Carolyn Bateson | re | New York |
| Roberta Alexander | re | Philadelphia |
| Severa Jones | defer | Philadelphia |
| Mary Smith | defer | Altanta |
| William James | defer | Atlanta |
| Edwin Lloyd | defer | Columbus |
| James Allen | defer | Dallas |
| Marvin Coble | re | New York |
| Irvin Faust | re | New York |
| Rodney Watson | defer | New York |
| Ronald Davenport | defer | Richmond |
| Miriam Moore | re | Chicago |

\* reevaluate